

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable John R. Shook
Criminal District Attorney
San Antonio, Texas

Dear Sir:                    Attention:  Jay Sam Levey

Opinion No. 0-2444
Re:  Under Opinion 0-2219 does the
Commissioners' Court or the
Sheriff have the right to hire
and fire courthouse janitors,
elevator operators and similar
employees? Other related
questions.

Your letter of June 3 requesting an opinion of this
department upon three questions stated therein has received
our attention. We herein quote the questions submitted:

"1. Under your Opinion No. 0-2219, does the
Commissioners' Court, or the Sheriff have the right
to hire and fire court house janitors, elevator
operators and similar employees?

"2. Does the Sheriff or Commissioners' Court
have the right to hire and to fire jail guards and
other employees connected with the operation of
the county jail?

"3. Does the Sheriff or Commissioners' Court
have the right to direct, in detail, the duties of
the county highway patrol appointed under the au-
thority of Article 6699B, of the Revised Civil
Statutes of 1925, as amended?"

With reference to your first question in our opin-
ion No. 0-2219 approved May 11, 1940, we wish to advise that
this department did not pass specifically on the question of
the right to hire and fire courthouse janitors, elevator
operators and similar employees.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable John R. Shook, Page 2

Article 2351, Revised Civil Statutes, provides that Commissioners' Courts shall "provide and keep in repair courthouses, jails and all necessary public buildings."

Article 6872, Revised Civil Statutes, provides that "sheriffs shall have charge and control of the courthouses of their respective counties, subject to such regulations as the Commissioners' Court may prescribe."

It must be admitted that these statutes leave it rather uncertain and vague as to where rests the authority to employ janitors for the courthouse. We have reached the conclusion, however, that the authority is in the Commissioners' Court. On the whole, it seems to us that the maintenance of janitor service is more in line with the character of business ordinarily given to the Commissioners' Court rather than to the sheriff. The latter officer is mainly a conservator of the peace, and we believe that Article 6872 was meant largely to place the sheriff in charge of the courthouse for the purpose of maintaining peace and decorum. We hold that the requirement for the Commissioners' Court to "provide and keep in repair a courthouse" means a habitable courthouse. For one to be habitable it must receive a certain amount of janitor service. Duty to perform the service carries with it the implied authority to employ a janitor as a necessary incident thereto. See El Paso County v. Elam, 106 S. W. (2d) 395; Howard v. Anderson County, 116 S. W. 479; Commissioners' Court of Madison County v. Wallace, 15 S. W. (2d) 335.

We believe that the function of employing janitors and like employees has been assumed by the Commissioners' Courts most generally over the State, and our opinion is in accord with rulings of prior administrations of this department, viz. Honorable Joe J. Alsup, Assistant, to Charles T. Leslie, Jr., County Auditor, Edinburgh, Texas, February 12, 1935; Honorable R. E. Gray, Assistant, to Mr. Burl Brittain, County Auditor, San Patricio County, August 12, 1938.

Answering your first question, therefore, it is the opinion of this department that the Commissioners' Court has the authority to employ and discharge courthouse janitors, elevator operators and similar employees.

Article 6871, Vernon's Revised Civil Statutes, provides as follows:

"Whenever in any county it becomes necessary to employ guards for the safekeeping of prisoners and the security of jails, the Sheriff may, with the approval of the Commissioners Court, or in

Honorable John R. Shook, Page 3

case of emergency, with the approval of the County
Judge, employ such number of guards as may be
hecessary; and his account therefor, duly itemized
and sworn to, shall be allowed by said Court, and
paid out of the County Treasury. Provided further,
that in all counties in this State, having a pop-
ulation of more than one hundred and forty thou-
sand (140,000) inhabitants and less than two hundred
and ninety thousand (290,000) inhabitants, ac-
cording to the last preceding Federal Census,
no guard, matron, jailer, or turnkey shall work
more than eight (8) hours in one day. In all
counties coming under the provisions of this
Act, at least one man shall be on guard on each
floor of said jail where male prisoners are
kept, and at least one matron shall be on guard
on each floor where female prisoners are kept;
and that not less than two (2) employees shall
be on guard in the main office of said jail at
one time. In case of emergency, those coming
under the provisions of the Act shall be subject
to the call of the Sheriff."

Article 5116, Vernon's Revised Statutes, provides:

"Each sheriff is the keeper of the jail of
his county. He shall safely keep therein all
prisoners committed thereto by lawful authority,
subject to the order of the proper court, and
shall be responsible for the safe keeping of
such prisoners. The sheriff may appoint a
jailer to take charge of the jail, and supply
the wants of those therein confined; but in all
cases the sheriff shall exercise a supervision
and control over the jail."

Article 5115, Vernon's Revised Civil Statutes, pro-
vides in part as follows:

". . . When there is no jail in the county,
the sheriff may rent a suitable house and employ
guards, the expense to be paid by the proper county."

The language of the above Article 6871, supra, au-
thorizes the sheriff with the approval of the Commissioners'
Court to employ guards necessary for the safekeeping of the
prisoners and the security of jails.

We think the language of this statute is clear on
the question that such right or authority to employ jail
guards, matrons, jailers and other authorized employees
necessary to the safekeeping of prisoners and security of the
jail, is vested in the sheriff. The only authority with re-
ference to their employment placed by statute in the Com-

Honorable John R. Shook, Page 4

missioners' Court is that such court, holding the purse strings of the county and charged with looking after its financial affairs, is to approve such employment. The sheriff, being charged with the duty of exercising supervision and control over the jail, being keeper of the jail and the prisoners confined therein with his official bond covering the faithful performance of such duties required of him by law, is primarily the person to determine the qualifications of those whom he desires to place in such positions of employment. The sheriff is doubtless in a better position than the Commissioners' Court to determine such question. The authority to employ generally carries with it the right to discharge.

It will be noted that compensation allowed by statute for services of guards and matrons, prior to the enactment of the salary law, were allowed to the account of the sheriff from whom these persons receive their pay. The enactment of the salary law would not in any wise have the effect of changing the status of their employment as to the employing and discharging of such persons.

Although Article 3902, Vernoh's Civil Statutes, is not applicable to the employees named herein, we quote from the case of Neeper v. Stewart, 66 S. W. (2d) 812, writ refused, the language of which is applicable, wherein the court, construing Article 3902, said:

"A public policy is thereby manifested in the case of county and precinct officers generally to empower such officers to select their deputies or assistants and to forbid the Commissioners' Court, or any member thereof, from attempting to influence such officers in their selection of assistants. The reason for this policy is obvious. Officers elected to discharge public trusts, and upon whom the responsibility for the proper discharge thereof rests, should be free to select persons of their own choice to assist them in its discharge."

In answer to your second question it is the opinion of this department that the sheriff has the authority to employ and discharge jail guards and other employees necessary for the safekeeping of prisoners and the security of the jails.

We will now discuss your third question, relating to the county traffic officers of Bexar County. In this connection, we acknowledge receipt of your letter of June 10th, accompanied by a copy of S. B. 278, Acts 1929, 41st Leg., Chap. 150, providing for the creation of a county police force in all counties having a population of 210,000 or more inhabitants. These particular officers and their duties as special patrolmen for patroling the county highway outside the corporate limits of the county seat of such counties, can hardly be considered a separate class distinguishable from those mentioned in Article 6699b. It being provided in this latter statute, viz: "The provisions of this Act shall apply to all counties in this State having a population of more than one hundred and twenty-five thousand (125,000) according to the preceding Federal Census," and being a later enactment, such would supersede S. B. 278, Acts 1929, 41st Legislature, and consequently, being no longer in effect, this law applying to counties of 210,000 or more inhabitants will not be considered in connection with your third question.

Article 6699b, Sections 1, 2 and 3, of Vernon's Annotated Civil Statutes, provides:

"Section 1. The Commissioners Court of each county, acting in conjunction with the sheriff, may employ not more than eight (8) regular deputies nor more than four (4) additional deputies for special emergency to aid said regular deputies, to be known as County Traffic Officers to enforce the Highway Laws of this State regulating the use of the public Highways by motor and other vehicles. Said deputies shall be, whenever practicable motor cycle riders and shall be assigned to work under the direction of the sheriff. They shall give bond and take the oath of office as other deputies. They may be dismissed from service on request of the sheriff whenever approved by the Commissioners Court, or by said Court on its own initiative whenever their services are no longer needed or have not been satisfactory. The Commissioners Court shall fix their compensation prior to their selection, and may provide at the expense of the county necessary equipment for said officers. The pay of said deputies shall

not be included in the settlements of the sheriff in accounting for the fees of office. Said deputies shall at all times cooperate with the police department of each city or town within the county in the enforcement of Traffic Laws therein and in all other parts of the county. The said deputies shall have same right and duty to arrest violators of the law as other peace officers have.

"Sec. 2. The salaries of such deputies shall be the same as that fixed by the General Law in Article 3902 of the 1925 Revised Civil Statutes of Texas, as heretofore and hereinafter amended, for other deputy sheriffs. Such salaries shall be paid monthly by the county out of the Road and Bridge Fund.

"Sec. 3. For the purposes of this Act, the Commissioners Courts may set aside, and use not to exceed fifteen (15) per cent of the motor vehicle registration fees apportioned to their respective counties. In the event funds from motor vehicle registration fees are insufficient or not available, then the Commissioners Court may use other Road and Bridge Funds."

We call your attention to the following language in the foregoing statute which states that such county traffic officers "shall be assigned to work under the direction of the sheriff."

The above statute authorizes not more than eight regular deputies nor more than four additional deputies for special emergencies, to aid said regular deputies not exceeding eight in number, to be known as county traffic officers "to enforce the highway laws of this State regulating the use of the public highways by motor and other vehicles." Whatever be "the special emergency" or situations in counties intended to be taken care of by the provisions of this act, it is apparent the Legislature had two things in mind; that of enforcement of the traffic laws and the particular duty to see that motor vehicles traveling same, were not being operated without proper licenses. There is no specific statutory limit as to the time of service of these deputies. It is in the discretion of the Commis-

sioners' Court to declare whether said "emergency" has ceased and the Court on its own initiative, may dismiss any or all of said deputies from service when their services are unsatisfactory. So long as they are not dismissed as provided by statute, the Commissioners' Court has no authority or right to regulate or direct their duties which are to be performed solely under the direction of the sheriff. Such duties directly relate to the law enforcement charge of the sheriff's office.

In answer to your third question, therefore, you are advised that it is the opinion of this department that the sheriff and not the Commissioners' Court has the right to direct, in detail, the duties of the county traffic patrol appointed under the authority of Article 6699b, Vernon's Annotated Civil Statutes of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Wm. J. R. King
Assistant

WJRK:GO

APPROVED JUN 29, 1940

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN